**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| STATE AUTO PROPERTY AND ) <br> CASUALTY INSURANCE COMPANY, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> QUEENSBROOKE OWNERS, ) <br> ASSOCIATION, ) <br> ) <br> Serve:  Paul L. Kennedy ) <br>           2100 Avignon Drive ) <br>           St. Charles, Missouri 63303, ) <br> ) <br>     Defendant. ) | Case No. <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiff, State Auto Property and Casualty Insurance Company, by and through undersigned counsel, pursuant to 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, and for its Complaint for Declaratory Judgment, states as follows:

**PARTIES**

1. Plaintiff State Auto Property and Casualty Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with its principal place of business in Columbus, Ohio.

2. Defendant Queensbrooke Owners Association is not-for-profit corporation organized and existing under the laws of the State of Missouri, with its principal place of business in St. Charles, Missouri.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of costs, interest and attorneys' fees, and there exists complete diversity of citizenship.

4. Venue is proper in the Eastern District of Missouri under 28 U.S.C. §1391 because the events and omissions giving rise to the claim occurred in this District and the property involved is situated in this District.

## GENERAL ALLEGATIONS

5. Plaintiff brings this action seeking an interpretation of the insurance policy described below and a declaration of the rights and obligations of the parties thereunder.

6. An actual justiciable controversy exists between Plaintiff and Defendant and litigation as to this controversy is imminent and inevitable. Resolution of matters raised in this action will dispose of all issues between the parties under the insurance policy issued by Plaintiff.

7. All necessary and proper parties are before the Court for the matters in controversy, and there is no other litigation between the parties concerning their rights and obligations under the insurance policy issued by Plaintiff.

8. Plaintiff has complied with all conditions precedent under the insurance policy and has no other adequate remedy at law.

## THE INSURANCE POLICY

9. Plaintiff issued a policy of insurance, policy number PBP2875151, dated October 1, 2019 to October 1, 2020, to Defendant for the properties located in the Queensbrooke Villas Subdivision in St. Charles County, Missouri (the "Policy"). *See* Exhibit 1, a true and accurate copy of the policy, attached hereto and incorporated herein.

10. The following properties are listed premises on the Policy: 928-930 Penny Lane; 896-898 Penny Lane; 936-938 Penny Lane; 816-818 Penny Lane; 800-802 Penny Lane; 856-858 Penny Lane; 824-826 Penny Lane; 864-866 Penny Lane; 848-850 Penny Lane; 872-874 Penny Lane; 808-810 Penny Lane; 944-946 Penny Lane; 840-842 Penny Lane; 880-882 Penny Lane; 952-954 Penny Lane; 832-834 Penny Lane; 888-890 Penny Lane; 960-962 Penny Lane; 912-914 Penny Lane; 792-794 Queens Court Place; 904-906 Penny Lane; 847-849 Penny Lane; 770-772 Queens Court Place; 920-922 Penny Lane; 935-937 Penny Lane; 793-795 Queens Court Place; 823-825 Penny Lane; 779-781 Queens Court Place; 771-773 Queens Court Place; 785-787 Queens Court Place; 778-780 Queens Court Place; 911-913 Penny Lane; 831-833 Penny Lane; 839-841 Penny Lane; 784-786 Queens Court Place; 919-921 Penny Lane; 927-929 Penny Lane; 76 Bond Ct.; 60-64 Bond Ct.; 68-72 Bond Ct.; 61-65 Bond Ct.; 2115-2119 Queensbrooke Blvd.; 80-84 Bond Ct.; and 69 Bond Ct. (the "subject properties").

### PRIOR CONDITION OF THE ROOFS

11. Pursuant to the Declaration of Covenants, Conditions, Easements, Restrictions and Disclosures for Queensbrooke Villas, Defendant is responsible for the maintenance and replacement of the roofs on the subject properties. *See* Exhibit 2, Declaration of Covenants, Conditions, Easements, Restrictions and Disclosures for Queensbrooke Villas.

12. In May 2019, Parrish Roof Consultants, LLC inspected the roofs on the subject properties and concluded that the roofs needed to be replaced within two years. *See* Exhibit 3, May 22, 2019 Letter from Parrish Roof Consultants, LLC.

13. Based on the findings from Parrish Roof Consultants, LLC, Defendant proceeded to obtain three bids for the replacement of the roofs on the subject properties from Howard Home Improvement, Inc., Double J Roofing and Contractors, and Thornton Exteriors. *See* Exhibit 4,

Estimate from Howard Home Improvement, Inc.; Exhibit 5, Estimate from Double J Roofing and Contractors; Exhibit 6, Estimate from Thornton Exteriors.

14. These estimates provide replacement costs between $589,441.26 and $731,277 for the replacement of the roofs on the subject properties.  Exhibit 4; Exhibit 5; Exhibit 6.

15. In August 2019, Defendant advised the homeowners that a roofing consultant and three roofing companies inspected the roofs "and all 4 have determined that due to normal deterioration our roofs need to be replaced.  Unfortunately none of the cost will be covered by insurance." *See* Exhibit 7, August 2019 Correspondence.

16. Queensbrooke also advised that it obtained three roofing bids and the replacement cost was over $600,000.  Exhibit 7.

17.  In December 2019, Defendant obtained another estimate from John Beal, Inc. for replacing the roofs on the subject properties, which totaled $671,818.  *See* Exhibit 8, Estimate from John Beal, Inc.

18. In January 2020, Defendant approved recommending to the homeowners that Howard be the roofer of choice for the roofing replacement project.  *See* Exhibit 9, February 10, 2020 E-mail.

19. In July 2020, under new Board President Dan Sterkin, Defendant advised the roofing projected was cancelled because "[t]he vast majority of roofs are intact and functioning properly and there is no immediate need to replace every roof." *See* Exhibit 10, July 7, 2020 Letter.

20. In January 2021, Defendant reiterated to the homeowners "that the vast majority of the roofs at Queensbrooke Villas are functioning properly and are within their life expectancy." *See* Exhibit 11, January 2021 Roof Topic Update.

21. In February and March 2021, Defendant obtained estimates from Frederick Co. Inc., Howard Home Improvement, Inc., and FM Roofing to replace the roofs on the subject properties due to their deteriorated condition, totaling $860,955, $731,277 and $718,000, respectively. *See* Exhibit 12, Frederick Co., Inc. Estimate, Exhibit 13, Howard Home Improvement, Inc. Estimate; Exhibit 14, FM Roofing Estimate.

22. Defendant chose FM Roofing as the preferred contractor of choice for the roofing replacement project in March 2021. *See* Exhibit 15, Minutes from March 25, 2021 Board of Directors Meeting.

23. In March 2021, Defendant received an opinion letter from its attorneys confirming that pursuant to the Declaration of Covenants, Conditions, Easements, Restrictions and Disclosures for Queensbrooke Villas, Defendant was responsible for the exterior maintenance, including the replacement and care of the roofs, and that if the roof repair was not conducted and the roofs continue to leak and fail, then Defendant could face liability, including claims for negligence and breach of fiduciary duty. *See* Exhibit 16, March 5, 2021 Letter.

24. In July 2021, Defendant was sued by several homeowners, John W. Pehr, Jack Carbone and Melinda Carbone, due to Defendant's refusal to replace their roofs as required under the Declaration of Covenants, Conditions, Easements, Restrictions and Disclosures for Queensbrooke Villas. *See* Exhibit 17, Petition for Specific Performance and Damages.

### THE INSURANCE CLAIM

25. On February 26, 2021, Defendant submitted a claim to Plaintiff alleging the subject properties sustained hail damage on March 26, 2020.

26. Plaintiff assigned claim number PR-0000000-350100 to Defendant's claim.

27. On December 27, 2021, Defendant retained James H. Bushart of James H. Bushart, Public Adjuster, LLC as its public adjuster. *See* Exhibit 18, Public Adjuster Representation Agreement.

28. As part of its investigation, Plaintiff requested that Defendant provide a Sworn Statement in Proof of Loss, produce certain documents and records, and appear for an Examination Under Oath.

29. On March 24, 2022, Defendant submitted a Sworn Statement in Proof of Loss, claiming $1,269,211.26 under the Policy for the replacement of the 44 roofs on the subject properties. *See* Exhibit 19, Sworn Statement in Proof of Loss.

30. Defendant's claim is based on an estimate from O'Fallon Window and Door, which provides a total replacement cost of $1,512,681.60 for the removal and replacement of the roofs on the subject properties. *See* Exhibit 20, March 7, 2022 Estimate from O'Fallon Window and Door.

31. On May 24, 2022, Defendant produced its Treasurer, Cindy Burkholder, as the Corporate Representative of Defendant, to testify under oath on its behalf at the Examination Under Oath.

32. Despite Plaintiff's repeated requests, Defendant failed to provide all of the documents and records requested by Plaintiff during the claim.

33. One or more of the following provisions, *inter alia*, of the policy apply and bar or may bar coverage in this case for Defendant:

**CAUSES OF LOSS - SPECIAL FORM**

\*\*\*

**B.** **Exclusions**

\*\*\*

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

\*\*\*

    **d.** **(1)** Wear and tear;

        **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

\*\*\*

        **(4)** Settling, cracking, shrinking or expansion;

\*\*\*

But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**3.** We will not pay for loss or damage caused by or resulting from any of the following B.3.a. through B.3.c. But if an excluded cause of loss that is listed in B.3.a. through B.3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*\*\*

    **b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    **c.** Faulty, inadequate or defective:

        **(1)** Planning, zoning, development, surveying, siting;

        **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        **(3)** Materials used in repair, construction, renovation or remodeling; or

        **(4)** Maintenance;

Of part or all of any property on or off the described premises.

\*\*\*

**C.  Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**1.**  We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

\*\*\*

**c.**  The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)**  The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters.

\*\*\*

## BUILDING AND PERSONAL PROPERTY COVERAGE FORM

\*\*\*

**E.  Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

\*\*\*

**3.**  Duties In The Event Of Loss Or Damage

**a.**  You must see that the following are done in the event of loss or damage to Covered Property:

**(1)**  Notify the police if a law may have been broken.

**(2)**  Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)**  As soon as possible, give us a description of how, when and where the loss or damage occurred.

      **(4)**    Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

      **(5)**    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

      **(6)**    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

      **(7)**    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

      **(8)**    Cooperate with us in the investigation or settlement of the claim.

**b.**    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

***

**COMMERCIAL PROPERTY CONDITIONS**

***

**A.**    **CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It I also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.    This Coverage Part;

2.    The Covered Property;

9

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

***

34. Defendant failed to comply with the conditions of the policy by concealing or misrepresenting material facts concerning a claim under the Policy, including, but not limited to, the facts and circumstances surrounding the claimed loss, the condition of the subject properties, the extent of the damages, and the amount of the claim presented, and other related matters.

35. Due to its conduct, Defendant is barred from recovery under the policy and no coverage exists for the claimed damages.

36. Defendant failed to cooperate and comply with its duties after a loss as required under the policy, including, but not limited to, failing to provide accurate testimony during the Examination Under Oath, failing to provide prompt notice of the loss or damage, failing to protect the property from further damage, failing to produce requested documents and records in support of the claim, failing to cooperate with Plaintiff in the investigation of the claim, and other related matters.

37. These failures to cooperate by Defendant, despite Plaintiff's reasonable diligence, have severely prejudiced Plaintiff's rights under the policy and, as such, Defendant is barred from recovery under the policy and no coverage exists for the claimed damages.

38. The damages claimed by Defendant are not the result of a Covered Cause of Loss, but instead are attributable to one or more of the following: wear, tear and/or deterioration, as well as faulty, inadequate or defective planning, zoning, development, surveying, siting, design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction, materials used in repair, construction, renovation or remodeling, or maintenance.

39. As the Policy precludes, excludes and/or limits coverage for such damages, Defendant is barred from recovery under the policy and no coverage exists for the claimed damages.

40. Plaintiff has sustained damage as a result of Defendant's concealments, misrepresentations and/or breaches of the policy conditions in that it has incurred substantial costs and expenses for claim response, investigation, adjusting and evaluating and attorneys' fees, which continue to accrue. Plaintiff is entitled to recoup and/or recover the amount of these costs and expenses from Defendant.

WHEREFORE, Plaintiff State Auto Property and Casualty Insurance Company respectfully requests that this Court: (1) determine the rights and obligations of the parties under the policy and enter a judgment construing the policy including applicable coverage provisions, exclusions, limitations and conditions thereunder in favor of Plaintiff; (2) declare that Plaintiff is entitled to recover the amount of costs and expenses incurred in investigation, including adjustment and evaluation of the claim, and attorneys' fees; and (3) for any and all such further relief that this Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Robert W. Cockerham
Robert W. Cockerham #31984
COCKERHAM & ASSOCIATES, L.L.C.
10803 Olive Blvd.
St. Louis, MO 63141
314-621-3900
Fax: 314-621-3903
rcockerham@cockerhamlaw.com

Attorneys for Plaintiff State Auto Property
and Casualty Insurance Company